MAYR et al. v HOLMQUIST et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1906.)

No. 1,199.

PATENTS—INFRINGEMENT—CURTAIN-STRETCHING FRAME.

The Mayr patent, No. 617,813, for a curtain-stretching frame, is for a combination of old elements, and, in view of the prior art and of the rejection of claims by the patent office, contains but a single novel feature, which consists of so proportioning the metal base of the movable pins and the slot in which they move that when a curtain engages the projecting point the base will tilt, and its respective edges will bear against the opposite sides of the slot, thereby preventing the sliding of the pin. As so construed, it is not infringed by the device of the Hoffheins patents, Nos. 603,690 and 676,895, which accomplishes the same result by different means.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

The bill of appellants, Mayr as owner and the stretcher company as his licensee, against appellees for infringement of letters patent No. 617,813, issued January 17, 1899, to Mayr for improvements in curtain-stretchers, was dismissed on the ground of noninfringement.

The description and claims are as follows: "My invention relates particularly to that class of bars used in frames for stretching lace curtains while drying in which the pins are made movable, so as to engage the meshes of the lace curtain at such a point that it will exert constraining force upon the curtain in but one direction, and thereby prevent a lateral force often found in frames where the bar-pins are made stationary; and the object of my invention is, first, to make a pin that shall be simpler of construction than the pins now in use, and, secondly, to prevent the pin sliding when in use. I attain these objects by means of the mechanism illustrated in the accompanying drawings, in which—

"Figure 1 is a plan view of a section of the bar, showing pins in position for use. Fig. 2 is an end view of the bar. Fig. 3 shows views of the pin with base of same piece of wire, and illustrates it with a round and square base. Fig. 4 shows a pin with a base consisting of a piece of metal, with a pin soldered or riveted thereto.

"Similar letters refer to similar parts throughout the several views.

"*a* represents a section of the bar, having a rabbeted edge on its upper surface. Opening on this rabbeted edge is the T-slot *c*, in which slide the pins *d d*. In Fig. 3 I have shown the base of the pins *d* in two shapes, round and square; but it is evident that they might have any one of an indefinite number of shapes if made to fit in the base of the T-slot. It is also evident that the base might have a different shape, making an L-slot or any similar shape.

"The pins are made to move freely in the slot; but when the curtain is stretched upon the frame the pins will be drawn over to the position indicated by the dotted line *e* in Fig. 2, and the base of the pin will be held rigidly

against the sides of the slot, so as to prevent sliding, thereby giving all the advantage of a stationary pin while in use and of a sliding pin when adjusting the curtain.

"A pin with a metal base having the upright piece soldered or riveted thereto, as shown in Fig. 4, I have found quite satisfactory, but prefer the pin shown in Fig. 3, as it can be stamped out of a single piece of wire, thereby lessening the cost to manufacture, and the pin formed in this way is very durable.

"Having thus described my invention, what I desire to secure by letters patent is—

"(1) A curtain-stretcher bar, having a rabbeted upper edge, a T or similarly shaped slot, opening upon the rabbeted upper edge, a pin with a metal base and so constructed that the said pin shall extend upwardly from said base, made movable in said slot, the metal base of said pin and the slot being so proportioned that when tilted such base will bear against both sides of the slot, thereby preventing the sliding of the pin, substantially as and for the purpose set forth.

"(2) A curtain-stretcher bar, having a rabbeted upper edge, a T or similarly shaped slot, opening upon the rabbeted upper edge, a pin having a base formed out of a single piece of wire, and so constructed that the said pin shall extend upwardly from said base, made movable in said slot, the base of said pin and the slot being so proportioned that when tilted such base will bear against both sides of the slot, thereby preventing the sliding of the pin, substantially as and for the purpose set forth."

"The dotted line e in Fig. 2" indicates a tilting of the pin's base within the slot of 10 degrees or more.

Appellees claim to make their curtain-stretcher in accordance with two patents granted to Hoffheins, No. 603,690, May 10, 1898, and No. 676,895, June 25, 1901, both having been applied for subsequently to Mayr's application. The three applications were pending in the patent office concurrently for some time before the issuance of a patent upon any of them.

From the description in appellees' second patent, which was for improvements upon the first, the following quotation will show the character of the pin and its relations to the slot in the rabbeted edge of the bar:

"F is the support or base for the movable or adjustable pins, each base formed integral with its pins f by bending a piece of wire on itself to have two side arms or pieces f" and f4, connected at one end by a cross-bar f3, as shown in Fig. 9, and having the pin f at the free end of the arm or side piece f" with a bend or curve f' at or near the point of juncture, by which the pin is given a bearing or support at the edge of the mouth e on the face of the rail, as shown in Figs. 8 and 10. The arm or side piece f" lies within the slot or cut e', and the arm or side piece f4 also lies in this slot or cut e on the opposite side, as shown in Figs. 8 and 10, and these arms or side pieces f" and f4 at their free ends throw outward, and, as shown, the free end of f4 is turned inwardly, to permit the ready entrance of the support F into the slot or groove E'. The side pieces or arms f" and f4 have a spring action by which the support is self-held in position by the bearing of the arms against the walls of the slot or cut e', which spring action does not interfere with the ready and easy changing or moving of the pins in use. These movable or adjustable pins in the end rails or pieces permit their being brought together or spread apart at any desired point for setting the side rails or pieces at the required distance apart for the width of curtain or fabric, and by providing the bend or curve f' the pin is brought over the edge of the mouth or opening e, and away from the inner edge of the rail, which with an inclined slot, as in Fig. 10, not only gives a firm bearing and support on the rail or piece for the pin, but also carries it farther away from the edge of the mouth or opening e, so that there will be less danger of breaking out or splitting the edge from strain in use."

In the first Hoffheins patent the following claims were allowed:

"(6) The combination of a frame-piece having at the inner edge a supporting-face terminating in a slot or groove on each side, and an attaching or retaining pin formed integral with its support or base from a single piece of wire

bent to produce a support or base having independent side arms or pieces free
at one end, and having an outward spring for the side arms or pieces to enter
the slots or grooves of the supporting-face, and lock and retain the pin in an
adjusted position by the spring action, forcing the side arms or pieces in con-
tact with the wall of the slot or groove, substantially as and for the purposes
specified.

"(7) An attaching or retaining pin for a stretcher, consisting of a single
piece of wire bent to form the pin and a support or base therefor having free
arms or side pieces, wider at the open than at the closed end, to give a spring
action for holding the pin in an adjusted position, substantially as and for
the purposes specified."

And in the second, these:

"(9) A sliding adjustable pin for a curtain-stretcher frame, having a base to
enter a longitudinal slot or groove in the frame-rail, and having above the
base an outward·bend or curve beyond the base of the pin to overlie the body
of the rail, with an upwardly and inwardly inclined pin end, substantially as ·
described.

"(10) A curtain-stretcher bar, having a rabbeted upper edge, an open longi-
tudinal slot in the rabbeted upper edge, wider at its base than on the face of
the rail, in combination with an adjustable pin movable in said lot, and having
an outward curve above the base extending over the body of the rail, thereby
supporting the pin against outward strain, and having above the curve an
upwardly-projected pin-point, substantially as described."

The record exhibits the following prior patents:

No. 42,077, March 29, 1864, to Chess; No. 62,422, February 26, 1867, to Idle;
No. 285,886, October 2, 1883, to Flickinger; No. 410,790, September 10, 1889,
to Eastman; No. 487,240, December 6, 1892, to Backof; No. 490,230, January 17,
1893, to Osgood; No. 515,701, February 27, 1894, to Wisner; No. 521,200, June
12, 1894, to Bartley; No. 532,416, January 8, 1895, to Cochran; No. 535,154,
March 5, 1895, to Austin; No. 540,783, June 11, 1895, to Eno; No. 543,644,
July 30, 1895, to Chenoweth.

Further facts are stated in the opinion.

Garry P. Van Wye, for appellants.
Wm. O. Belt, for appellees.

Before BAKER and SEAMAN, Circuit Judges, and BETHEA,
District Judge.

BAKER, Circuit Judge (after stating the facts). The prior art, as
disclosed in this case, taught Mayr how to construct a curtain-stretcher
with bars that formed an adjustable frame; how to rabbet the bars and
cut the T-shaped slots; how to fashion a pin-base that was held by the
slot, was movable along the slot, and carried the pin-point outside of
the slot; and how to bend a single piece of wire into a pin, including
both the shaft and the base.

This wire pin, as a pin, was covered by the patent to Chess; but none
of the prior patentees (Backof, Osgood, Wisner) who used pins held
by and movable in the slots had tried the Chess pin in the rabbeted and
slotted stretcher box. So Mayr made this claim:

"A curtain-stretcher bar, having a rabbeted upper edge; a T or similarly
shaped slot, opening on the said upper edge; a pin having a base stamped out
of the same piece of wire, made movable therein, substantially as shown and
for the purpose set forth."

But all of these elements were old, and old, too, was the combination
of the rabbeted and slotted bar with certain movable pins. Conse-
quently, the examiner took the view that no invention was required to

substitute the Chess pin for one of the others in the slotted bar. Mayr then amended the claim to read:

"In combination with a curtain-stretcher bar, a movable pin with a base stamped or formed out of a single piece of wire, and so constructed that the said pin will stand perpendicular to said base, substantially as shown and for the purpose set forth."

But this claim as amended was just as plainly for the Chess pin in the Backof bar. So it was rejected, and that decision was affirmed on appeal to the examiners in chief.

The other two claims in Mayr's original application were also rejected by the examiner. They came before the examiners in chief in substantially the form in which they appear in the patent, except this, that the wording of the claims in the patent, "the base of said pin and the slot being so proportioned that when tilted such base will bear against both sides of the slot, thereby preventing the sliding of the pin," has been substituted for, "the pin made movable in said T-slot in such a way that the pin will be drawn against the side of the T-slot when the curtain is stretched upon it, thereby preventing the sliding of the pin when in use." The rejection of these claims was also affirmed by the examiners in chief, but they suggested that they would recommend an allowance of the claims if amended so as to specify distinctly that "the base of the pin and the slot are so proportioned that when tilted such base will bear against both sides of the slot, thereby preventing the sliding of the pin." Mayr thereupon made the suggested amendments and took out the patent.

The file-wrapper and contents, together with the reference patents, thus make clear exactly what Mayr did. He took the combination of a stretcher bar, a rabbeted edge, a T-shaped slot, a wire pin with its base within the slot and its point projecting out through the lips of the slot (a combination which he agreed, by acquiescing in the rejections, was open for any one to use), and improved upon it by so proportioning the base of the pin and the slot that when a curtain should engage the projecting point the base would tilt, and its respective edges would bear against the opposite sides of the slot, "thereby preventing the sliding of the pin." The proportioning of the slot and base to obtain the slide-preventing tilt is the only feature that can give vitality to the patent, and in order to appreciate the force and bearing of the proceedings in the patent office, that feature of the claims must be read in connection with the description and drawings. The description says that "the pins are made to move freely in the slot." The drawings show a very distinct tilting—as much as 10 degrees—and while they are, of course, not to be taken as working plans, nevertheless the description and drawings, together with the history of the claims, require such a looseness in the slot that there shall be a distinct and intended tilting of the base to secure the specified result.

Appellees insist that the proportioning of the base and slot to obtain the slide-preventing tilt cannot sustain the patent, because it was present in the earlier devices. The Backof patent is probably the strongest reference, outside of Mayr's disallowed claims. Backof's pin points project from wooden blocks, which are held by and are movable along

the slot or groove. The specification requires the blocks to "work freely in the groove," but apparently only to the extent necessary to enable the blocks to be slidden into place readily. There is no hint in the description or drawings or claims that there shall be a distinct and intended play between the base and the slot in order to obtain thereby a further or new result. On the contrary, the patent indicates that such a thought was entirely absent from Backof's mind. The wooden block was to be fitted as snugly into the slot as possible, without preventing the user from moving it readily; and so with the device of Mayr's claim, which was totally rejected. It was offered as an improvement upon Backof's bar. But because the known wire base was to be substituted for the known wooden base, and be fitted into the slot in the known way, the claim was rejected.

We cannot give to the Backof patent and to Mayr's rejected claim a construction to sustain infringement different from that put upon them to avoid anticipation. Now, if upon Backof's snugly fitting block a prying strain be put by means of the projecting pin shaft as a lever, there will necessarily be a binding effect, in the nature of a tilting of the base within the slot, and as Backof required the blocks to "work freely in the groove," there might be a barely perceptible tilting; and this is found in the Backof exhibit. But the binding was rather to be avoided than sought, like the binding of rings upon a curtain pole, where freedom of movement is the object; and the record satisfies us that not only was there no distinct and intended tilting, but also that the binding caused by the strain of the curtain was not sufficient to lock the pins in place.

Mayr improved upon Backof by substituting a wire base for the wooden block; but this improvement was open to every one's use, as Mayr confessed in the patent office. There is no exhibit of Mayr's rejected claim, but it is quite evident that if upon the snugly fitting wire base a prying strain be put by means of the projecting pin shaft as a lever, there will necessarily be a binding effect, in the nature of a tilting of the base within the slot. And as it is a requirement of every stretcher bar with movable pins that the pins be free for adjustment by the user, there might be a barely perceptible tilting. Nothing has been shown in evidence to prove whether the bite of the wire base of Mayr's rejected claim on the wooden bar, caused by the strain of the curtain, would or would not be sufficient to lock the pins in place.

To sustain the validity of the allowed claims as amended, we must hold that the distinct and intended tilting was not anticipated by the unsought and unavoidable binding or tilting of the Backof patent and Mayr's rejected claim. So infringement can be predicated on nothing less than such a proportioning of base and slot as will charge appellees with using a distinct and intended tilt to prevent sliding. Mayr could not monopolize the result. If that was not already attained in Mayr's disclaimed improvement, appellees were free to use that improvement, with its unsought and unavoidable binding, and proceed therefrom to the result of a curtain-locked pin by any means other than using the distinct and intended tilting of the claims in suit. In the Hoffheins patents and in the exhibits of appellees' stretcher bar the result is obtained by adding to the unavoidable binding in Mayr's rejected claim the friction that

comes from making the base normally wider than the slot, and bending the shaft so that it bears upon the outside of the lip of the slot. We disagree with appellees' contention that the spring-base alone locks the pins when the curtain is put on the stretcher. On the spring-side of the base there is the combined friction of the spring and of the unavoidable binding that obtained in Mayr's rejected claim; and on the other side the total friction is divided between the unavoidable binding within the slot and the intentional bearing of the bent shaft upon the outer surface.

At the bar appellants called attention to the fact that appellees' exhibited pins were made of wire that would not retain its spring. Even so, the pins would at least fill the slot as completely as in Mayr's rejected claim.

The presumption which, in view of the state of the art, arose from the grant of the Hoffheins patents, accords with the facts of the record in supporting the conclusion that Mayr and Hoffheins started from common ground, and each made an independent advance. Compare Milwaukee Carving Co. v. Brunswick Co., 126 Fed. 185, 61 C. C. A. 175, and Loew Supply Co. v. Fred Miller Co. (C. C. A.) 138 Fed. 889.

The decree is affirmed.